IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY WEAVER,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE BOARD OF EDUCATION<br>OF THE CITY OF CHICAGO, et al.<br><br>    *Defendants*. | No. 18 C 3680<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Mary Weaver was an elementary school principal in Chicago that the Board of Education investigated and uncovered evidence of her falsifying student attendance data, instructing teachers to cheat in a contest, improperly using sick time, falsely reporting vacation plans, and interrogating, harassing, or intimidating staff members, amongst other charges. (Dkt. 1.) The Board notified Weaver that it approved those charges against her and informed her that it intended to dismiss her. (Dkt. 14.) After Weaver did not request a dismissal hearing within the 17-day statutory period, the Board terminated her in 2016. (*Id.*) Weaver appealed the Board's termination decision to the Appellate Court of Illinois, which in 2017 affirmed the Board's ruling. (*Id.*)

In 2018, Weaver sued the Board and its members in federal court, alleging that: (1) the Board deprived her of her rights to freedom of speech and due process under the First and Fourteenth Amendments to the Constitution of the United

States; (2) the Board violated the Family Medical Leave Act of 1993 ("FMLA"); and (3) the Board breached its contract with Weaver and she detrimentally relied on the Board's promise to her. (Dkt. 1.) Specifically, Weaver asserts Count I (deprivation of liberty interest without due process), Count II (deprivation of property interest without due process), Count III (termination in retaliation for protected speech), Count IV (Family and Medical Leave Act), Count V (breach of contract), Count VI (promissory estoppel), Count VII (Illinois Wage Payment and Collection Act) ("IWPCA"), Count VIII (*Monell* claim), and Count IX (745 ILCS 10/9-102 – indemnification). (*Id.*)

The Board and its former CEO, Forest Claypool, now move to dismiss Weaver's complaint arguing that a prior state court judgment should preclude Weaver from relitigating claims and issues already decided against her. (Dkt. 14, 31.) Alternatively, the defendants contend that Weaver failed to state a claim or plead sufficient facts to support a claim in Counts I–III. (*Id.*) The Board also argues that the doctrine of claim splitting and the applicable statute of limitations bar Weaver's IWPCA claim, and a *Monell* claim cannot survive absent an underlying constitutional violation. (*Id.*) Claypool, for his part, contends that Weaver's official capacity claims against him are duplicative and that she failed to allege any facts to support her individual claims.

Because this lawsuit arises out of the same transaction as the state case and includes the same parties, the appellate court's final judgment on the merits precludes Counts I–VI. Additionally, Weaver cannot split Count VII and Counts VIII–IX cannot continue without the support of the preceding Counts. Therefore, the Court grants the defendants' motions to dismiss (Dkts. 14, 31) all counts in the complaint

with prejudice. *See Bernstein v. Bankert*, 733 F.3d 190, 224–25 (7th Cir. 2013) (noting that a dismissal on res judicata grounds is a dismissal with prejudice).

**BACKGROUND**

Weaver began her education career in 1995. (Dkt. 1 at 3.) Weaver contracted with the Board three times to serve as a principal for four-year terms. (*Id.*) Based on those agreements, the Board could only terminate Weaver prior to the end of the term seven different ways, one of which was "removal of the Principal for cause pursuant to 105 ILCS 5/34-85." (*Id.*) At all relevant times, Weaver was the Principal of Scammon Elementary School.

**I.  Pregnancy Discrimination Allegations**

In 2010, the Board laid off a Scammon employee, Jane Bushue, who subsequently filed a pregnancy discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 6.) Weaver raised a concern regarding female employees at her school that the Board targeted for layoffs while the women were starting or returning from maternity leave to Joe Kallas, Chief of Chicago Public Schools' ("CPS") Law Department, and CPS Labor Relations, in 2012. (*Id.* at 4.) Weaver also told the Deputy General Counsel of the Board, James Ciesil, that this could result in Title VII liability for CPS. Ciesil responded, telling Weaver not to worry and that the Law Department was responsible for layoffs. (*Id.*)

The Department of Justice ("DOJ") sued CPS in 2014, alleging that Weaver discriminated against Bushue and other Scammon teachers because of their pregnancies, though Weaver denied this. (*Id.* at 6–7.) In 2015, Weaver presented City of

Chicago Law Department attorneys with evidence demonstrating that the pregnancy discrimination allegations lacked foundation. (*Id.* at 7.) She believes the CEO and the Board were aware of this information. (*Id.* at 7–8.) According to Weaver, the Board ignored this evidence and used her as a scapegoat for its own decision to terminate the employees. (*Id.* at 8.)

Weaver requested whistleblower protection from the DOJ three times in 2015 for reporting misconduct concerns involving CEOs Bennett and Forest Claypool, and other CPS administrators. (*Id.*) Toward the end of 2015, CPS General Counsel Cheryl Colston told Weaver that the Board reached a settlement with DOJ. (*Id.*) In Weaver's words, Colston stated that Weaver would serve as a "fall guy" for the Title VII charges, and as a result, the Board would discipline her, and subject her to professional development and court monitoring for three years. (*Id.*) DOJ announced the settlement in December 2015. (*Id.*)

## II. Selective Enrollment Guidelines and Aramark Services

Weaver also repeatedly complained to CPS officials about Board Guidelines for selective enrollment into CPS' premier magnet, specialty, and military high schools. (*Id.*) She claimed that the new policies incorrectly classified Scammon students as high-income, which reduced their chances of admission into the selective enrollment schools. (*Id.* at 4–5.) Weaver raised this issue with Mayor Rahm Emanuel in 2012 and 2013, as well as Alderman Ariel Reboyras and State Senator Iris Martinez. (*Id.* at 5.) From 2012 to 2015, Weaver voiced her concern with the Central Office, claiming that the process was "rigged" against poor and minority students. (*Id.*)

In 2014, Weaver repeatedly contacted top CPS administrators, including Food Director Leslie Fowler and Aramark Director Leslie Norgren, criticizing the food, facility, and uniform services provided to the schools was abysmal. (*Id.*) Weaver additionally reached out to Kent Bayer at Aramark (the contractor) itself, who redirected her to Marilyn Green at CPS. (*Id.*) Weaver requested substitute lunch room personnel, but Green informed her that none were available for her school. (*Id.*)

At the end of the year, Weaver emailed Aramark and CPS officials, including the CEO of CPS, Barbara Byrd Bennett, regarding the filthy condition that Aramark left her building in. (*Id.* at 6.) She forwarded one of these emails to Chicago Aldermen, Illinois State Representatives, Illinois State Senators, CPS Officials, Chicago Tribune reporters, Chicago Sun Times reporters, amongst others. (*Id.*) Weaver hoped there would be an investigation that would lead to better conditions in the schools. (*Id.*) Scammon was not alone; other principals complained, too, which resulted in negative press coverage and the Mayor's public demand that Aramark fix the problems. (*Id.*) The Board and CEO Bennet were under pressure to resolve the issues. (*Id.*)

### III. Access to and Monitoring of Weaver's Computer

The Board approved Weaver's FMLA leave from September 23 until December 25, 2014, because of her husband's declining health and ultimate death on September 30. (*Id.*) After Weaver returned from leave in 2015, CPS Chief of Information and Technology Lachlan Tidmarsh was at Scammon addressing multiple technical issues, including lack of access to mandated programs, missing files, and the viewing,

sorting, deleting, and reloading of emails several days later than the actual dates. (*Id.* at 7.) When Tidmarsh accessed Weaver's office computer, he stated: "You're on Administrative Watch – All of your computer activity is being monitored by downtown." (*Id.*) Tidmarsh also confirmed that somebody accessed Weaver's personal files and/or copied them onto CPS' server. (*Id.*) These files included research and writing relating to Weaver's concerns of CPS employees' fraud, cronyism, and conflicts of interest. (*Id.*) Weaver researched CEO Bennett, amongst others, and she was actually in the process of drafting chapters for a book focused on these issues. (*Id.*) Weaver reraised this issue with Tidmarsh in 2017, and he told her that only CPS Chief General Counsel, James Bebley, could place an employee on "Administrative Watch" at the request of top administrators. (*Id.*)

## IV. Weaver's Removal and Subsequent Termination

On December 28, 2015, Chief of Public Schools Anna Alvarado notified Weaver that the Board was removing her from her duties and reassigning her to home based on a "substantiated investigation" by the Board's Office of the inspector General. (*Id.* at 8.) Weaver also alleges that Alvarado told her that the Board would notify her of her due process rights soon, which never occurred. (*Id.*) The Board approved Weaver's FMLA leave from March 3 through May 25, 2016, because of a serious health condition. (*Id.*)

On April 1, while she was on leave, Weaver received a letter from CEO Claypool notifying her that he approved the charges against her that alleged conduct unbecoming of a CPS employee. (*Id.* at 9.) The letter stated that the Board tentatively

scheduled a dismissal hearing for April 29, and that it would dismiss Weaver without a hearing unless she requested in writing that the CEO schedule a hearing within 17 days of the letter's receipt. (*Id.*) Weaver also received an additional letter from Manager of Employee Engagement Thomas A. Krieger informing her of a "pre-suspension hearing" on April 8 at the Office of Employee Engagement. (*Id.*)

Weaver alleges that the charges were meritless and that the Board knew she was on an approved FMLA leave when they notified her of them, and that she would still be on leave at the time of the hearings. (*Id.*) On April 6, Weaver's attorney, Michael Dolan, emailed the Board's Deputy General Counsel James Ciesil, stating that Weaver was on leave until May 25 and that no hearing could take place until she returned. (*Id.*) Ciesil emailed back, informing Dolan that the formal discharge hearing would take place "several months from now." (*Id.* at 10.)

Dolan spoke with Ciesil again on April 8, and Weaver says that Ciesil agreed to discuss scheduling the pre-suspension hearing after Weaver returned from her FMLA leave on May 25. (*Id.* at 9.) The Board terminated Weaver's employment on May 25, 2016 because Weaver did not request a dismissal hearing within 17 days of her receipt of Claypool's April 1 letter. (*Id.* at 10.) Weaver believes that this is a pretextual reason for termination, and none of the contractual conditions occurred, which would have warranted her dismissal. (*Id.*)

Weaver appealed the Board's termination decision to the Appellate Court of Illinois. *See Weaver v. Bd. of. Educ. of Chi.*, 2017 IL App (1st) 161764. In 2017, that

court affirmed the Board's decision. *See id.* Weaver complained in this Court in 2018. (Dkt. 1.)

## STANDARD OF REVIEW

In the defendants' motions to dismiss, they principally argue that claim preclusion should bar Weaver's federal lawsuit. Claim preclusion, however, is an affirmative defense, "so the proper procedure is to raise the defense and then move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure." *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014) (citations omitted). Typically, then, district courts should not dismiss a complaint based on an affirmative defense like claim preclusion. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). But when the face of the complaint and judicially noticeable records clarify the legal barring of the plaintiff's claims, dismissal is appropriate. *See Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 882–83 (7th Cir. 2017). Here, the state and federal filings give this Court everything it needs to rule on claim preclusion. *See id.* Therefore, although technically incorrect, the Court will consider the claim preclusion defense in the motions to dismiss under Rule 12(b)(6).

A complaint must "'state a claim to relief that is plausible on its face.'" *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a "'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)). Conclusory statements do not suffice. *See id.* In construing the complaint, the Court accepts all the well-pleaded facts as true and "'draw[s] all reasonable inferences in favor of the plaintiff.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)).

## ANALYSIS

As an initial matter, the parties agree that the claims against Claypool in his official capacity as CEO of the Board should be dismissed, so the Court will only analyze those allegations made against Claypool in his individual capacity, which Claypool says are insufficient anyway. (Dkt. 31 at 3; Dkt 35 at 3.) The defendants otherwise argue that the Appellate Court of Illinois' judgment should preclude Weaver from complaining of Counts I–VI (including due process, retaliation, FMLA, and contract allegations) because the state court already decided, or could have decided, those claims against her.

The Board also contends that claim splitting and the statute of limitations bar Count VII, the IWPCA claim. Finally, the Board says that Weaver cannot maintain Counts VIII (*Monell*) and IX (indemnification) absent some other independent jurisdictional foundation. Weaver responds, alleging that preclusion does not apply here, that she sufficiently stated her due process and retaliation claims, and that the IWPCA claim is not split nor untimely. Based on these assertions, Weaver believes her *Monell* and indemnification claims should not be dismissed either.

## I. Claim Preclusion

Because the Appellate Court of Illinois rendered the judgment on which the application of claim preclusion relies, this Court must look to the state's preclusion doctrine to determine whether the prior state court litigation bars her federal lawsuit. *See Mlaska v. Schicker*, No. 17-1962, 2018 WL 3949193, at *2 (7th Cir. Aug. 16, 2018) (citing 28 U.S.C. § 1738; *Adams v. Adams*, 738 F.3d 861, 865 (7th Cir. 2013)). In Illinois, claim preclusion has three elements: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies." *Id.* (quoting *Village of Bartonville v. Lopez*, 77 N.E.3d 639, 650 (2017)).

"The bar to subsequent litigation 'extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit.'" *Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 888 (1998)). If the plaintiff could have raised the claim but did not, the doctrine still applies, barring the plaintiff from re-raising it in the second action. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (internal quotations and citations omitted).

### A. Final Judgment on the Merits

On April 11, 2017, the Appellate Court of Illinois affirmed the Board's decision to terminate Weaver, holding that there was no due process violation, nor meritorious FMLA, retaliation, or promissory estoppel claims. *See Weaver v. Bd. of. Educ. of Chi.*, 2017 IL App (1st) 161764, at ¶¶ 17–19, 21–14. The appellate court's decision in

reviewing Weaver's administrative proceedings constitutes a final judgment on the merits. *Cf. Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1017 (7th Cir. 2014).

The appellate court recognized, however, that Weaver's failure to request a dismissal hearing limited the scope of its review and the relief it could afford her. *See Weaver v. Bd. of. Educ. of Chi.*, 2017 IL App (1st) 161764, at ¶ 17. But the appellate court nonetheless stated that the record was sufficient to review Weaver's claims because she did not "contest the substantive findings of the Board;" instead, she sought a "'non-substantive reversal of her termination on the ground that the method by which the Board accomplished her removal violated her due process rights . . ." *Id.* So, Weaver legally challenged the Board's decision; she did not contest the facts themselves but rather their legal import and significance. Reviewing courts owe no deference to agencies on questions of law. *See LaSalle Nat. Bank v. City of Highland Park*, 799 N.E.2d 781, 787 (2003), *as modified on denial of reh'g* (Oct. 31, 2003) (citation omitted).

Changing tack, Weaver now argues that because there was no dismissal hearing, there was no record for the appellate court to review regarding whether the Board terminated weaver for cause or some pretextual reason, so there was no merits decision on the breach of contract claim. Weaver also contends that the appellate court did not rule on her retaliation or FMLA claims because the court did not analyze the substance of the underlying charges against Weaver. Finally, Weaver asserts that the appellate court was not a court of competent jurisdiction for preclusion purposes because it had no authority to review her claims for breach of contract, promissory

estoppel, 42 U.S.C. § 1983, or FMLA claims along with her complaint for administrative review.

As an initial matter, the appellate court rendered final judgment on the merits of Weaver's due process, FMLA, retaliation, and promissory estoppel claims. *See Weaver v. Bd. of. Educ. of Chi.*, 2017 IL App (1st) 161764, at ¶¶ 17–19, 21–14. Moving to Weaver's last contention, Illinois trial courts are courts of general jurisdiction, and "presumptively competent to adjudicate" federal civil-rights claims. *Blount v. Stroud*, 904 N.E.2d 1, 16 (2009). Moreover, "Illinois litigants seeking circuit-court review of administrative proceedings implicating events that also give rise to a federal civil-rights claim must join that claim with the judicial-review action in the circuit court." *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1017 (7th Cir. 2014) (citations omitted). The only reason this action was in the appellate court and not the trial court is because the legislature chose to put it there. *See* 105 ILCS 5/34–85(a)(8). In theory, this "should result in more expeditious judicial determination of the issues sought to be administratively reviewed." *Weldon Co-op. Grain Co. v. Pollution Control Bd.*, 322 N.E.2d 524, 526 (1975).

That the appellate court performs administrative review normally reserved to the trial court does not demonstrate an intent to divest the appellate court of jurisdiction over these claims. *See Hardee's Food Sys., Inc. v. Illinois Human Rights Comm'n*, 507 N.E.2d 1300, 1303 (1987) (explaining that the similar procedure enabling direct appellate review of an administrative order is "merely procedural in scope affecting the court in which administrative review is to take place and does not impair

or affect any rights and liabilities . . ." set forth under the law). This is a common feature of Illinois civil procedure. *See Weldon Co-op. Grain Co.*, 322 N.E.2d at 526 (considering the state environmental statute that also granted direct review of agency action in the appellate court). The appellate court routinely reviews the administrative records in these cases to determine whether the "Board had sufficient reason for finding cause to discharge [the] plaintiff." *Kelly v. Bd. of Trustees of Univ. of Illinois*, 559 N.E.2d 196, 201 (1990).

Because the appellate court was of competent jurisdiction, Weaver should have brought her current claims in state court, joining them with the judicial action for administrative review. *See Dookeran v. Cty. of Cook*, 719 F.3d 570, 578 n.4 (7th Cir. 2013) (plaintiffs must bring federal claims "in tandem with judicial review proceedings . . ."); *see also Walczak*, 739 F.3d at 1017; *Bonnstetter v. City of Chicago*, 811 F.3d 969, 975 (7th Cir. 2016).

### B.     Same Claims

"Illinois courts interpret 'identity of cause of action' broadly such that 'separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.'" *Baek v. Clausen*, 886 F.3d 652, 660 (7th Cir. 2018) (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (1998)). Courts and litigants call this the "transactional test" or "transactional analysis." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017); *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 804 (7th Cir. 2018). The question is not whether

the legal theory is different but whether the case arises from the same core set of operative facts.

Here, Weaver's federal lawsuit and her prior case in Illinois state court comprise the same cause of action because both arise out of a single transaction: Weaver's termination. *Cf. Chellappa v. Summerdale Court Condo. Ass'n*, 729 F. App'x 451, 453 (7th Cir. 2018) (citing *Hayes v. City of Chicago*, 670 F.3d 810, 814 (7th Cir. 2012), which considered different asserted motivations for discharge to still arise out of the single discharge). First, some of the claims are identical and Weaver brought them in the appellate court when she challenged the Board's decision, including her due process, FMLA, retaliation, and promissory estoppel claims. *See Weaver v. Bd. of. Educ. of Chi.*, 2017 IL App (1st) 161764, at ¶¶ 17–19, 21–14.

Second, the other remaining claim, breach of contract, is one that could have been brought but was not. Indeed, it is just an alternative theory of relief from promissory estoppel. *Cf. Firestone Fin. LLC v. Meyer*, 881 F.3d 545, 549 (7th Cir. 2018) (observing that promissory estoppel is a contract absent consideration); *see, e.g.*, *Sapia v. Bd. of Educ. of City of Chicago*, No. 14-CV-07946, 2018 WL 1565600, at *4 (N.D. Ill. Mar. 31, 2018) (restating the state court's opinion, which noted that when a plaintiff contests the defendants' compliance with "for cause" termination procedures, the claim is not based on due process but instead the state law of contracts). That said, Weaver seems to believe the appellate court ruled on her breach of contract claim. (*See* Dkt. 18 at 4.)

Weaver's cases center around the same story; specifically, the representations that the Board made to her and her counsel regarding the dismissal hearing. But two cases relying on the same representations involve the same series of events. *See Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 458 (7th Cir. 2017) (citing *Chicago Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075 (7th Cir. 2011)). Moreover, as stated above, whether the claims rely on federal law or state law, the appellate court had jurisdiction to consider them. *See, e.g., Thompson v. Bd. of Educ. City of Chicago*, No. 14 C 6340, 2018 WL 1441108, at *6 (N.D. Ill. Mar. 22, 2018). For the purposes of claim preclusion, Weaver's allegations regarding her termination are the same in the present case as they were in the state case. *See, e.g., id.*

### C. Same Parties

Weaver prudently does not contest that the parties are not the same in this lawsuit as they were in the state case. (*See* Dkt. 18 at 3–8.) The named parties in the state court action were the Board and its members. *See, e.g.*, Thompson, 2018 WL 1441108, at *5. Here, Weaver named the same parties and then added the Board's CEOs during the relevant time period, who are in privity with the parties in the first case. *See Mlaska v. Schicker*, No. 17-1962, 2018 WL 3949193, at *3 (7th Cir. Aug. 16, 2018) (stating that privity exists between parties 'who adequately represent the same legal interests') (citation omitted); *Baek v. Clausen*, 886 F.3d 652, 660–61 (7th Cir. 2018) (asserting that "employees are in privity with their employer for purposes of res judicata") (citation omitted); *see also Kykta v. Ciaccio,* 633 F. App'x 340,

343–44 (7th Cir. 2015) (citing *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 634–37 (7th Cir.2004), which held that a "municipal employee sued in his official capacity was in privity with the city").

In sum, the prior state court judgment bars Weaver's attempt to assert Counts I–VI in her complaint. Her dissatisfaction with that decision or its reasoning is of no moment because her "remedy was to appeal, not to start over with a new suit." *Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 882–83 (7th Cir. 2017). By her own allegations, Weaver received notice of her termination and an *opportunity* for a hearing. The statute demands that the principal or teacher request the hearing in writing, not the Board. *See* 105 ILCS 5/34-85(a)(2). Therefore, the Board and its privies are not liable for her failure to do so. Lastly, because preclusion applies, this Court need not reach the defendants' alternative arguments for dismissal of Counts I–VI.

## II. Statutory Wage Claim

Weaver alleges that the Board (and the City) did not pay all her wages upon termination in violation of the Illinois Wage Payment and Collection Act. The Board responds by pointing to the same claim that Weaver filed prior to her federal lawsuit with the Illinois Department of Labor ("IDOL"), which remains pending. (*See* Dkt. 14 at Ex. B.) In Illinois, plaintiffs cannot "split" a claim between two separate lawsuits. *See Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 785 (7th Cir. 2016). In other words, this doctrine "prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action." *Id.* (citing *Brown v. City*

*of Chicago*, 771 F.3d 413, 414–15 (7th Cir. 2014); *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1206–07 (1996)).

Weaver cites *Hilliard v. Hardin House*, 2018 IL App (1st) 171787-U, ¶ 18, which she says stands for the proposition that an employee may seek a remedy for unpaid final compensation in both venues. This misreads *Hilliard*'s plain language: "We agree with the *DocuFinish* court that section 14 of the Act does *not* mean that '[o]nce the plaintiff has filed with the DOL, he must content himself with whatever remedy results from those administrative proceedings' and 'may not file a subsequent court action for lost payment of wages.'" *Id.* (citation omitted) (emphasis in original). In *Hilliard*, the plaintiffs correctly did not assert that they could pursue their claims before the Labor Department and in the state trial court *simultaneously*. *See id.* at ¶ 17. Instead, the plaintiffs withdrew the administrative claims to avoid duplicative litigation.

Here, Weaver essentially asks for duplication. She would have this Court work around the state courts' holdings that a plaintiff may only "file a civil claim for owed wages under the Act in the circuit court *after* the plaintiff has received a wage payment demand from IDOL." *Id.* (citation omitted) (emphasis added). The only thing the statute and case law prohibits is double recovery. Weaver may proceed separately, but she may only do so by filing a "*subsequent* court action." *Id.* at ¶ 18 (emphasis added). Simultaneous pending actions will not do. For that reason, the Court need not address the Board's alternative statute of limitations defense, which is ordinarily improper in a motion to dismiss anyway.

### III. *Monell* and Indemnification Claims

The *Monell* (Count VIII) and indemnification claims (Count IX) cannot move forward without support from the seven preceding counts. *See Avina v. Bohlen*, 882 F.3d 674, 679 (7th Cir. 2018) (recognizing that there is no *Monell* claim without the aid of an underlying constitutional violation); *Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) (explaining that the issue of indemnification does not ripen "until liability has been established"); *see also State Farm Fire & Cas. Co. v. John*, 2017 IL App (2d) 170193, ¶ 20. Because preclusion applies in one way or another to the first seven counts, the last two counts fare no better and the Court must dismiss them, too.

## CONCLUSION

For the reasons stated above, the Court grants the defendants' motion to dismiss (Dkts. 14, 31) all counts in the complaint with prejudice because legal preclusion doctrines bar Counts I–VII and Counts VIII–IX cannot survive without the foundation of the first seven counts. *See Bernstein*, 733 F.3d at 224–25 (stating that a dismissal on preclusion grounds is a dismissal with prejudice).

_____
Virginia M. Kendall
United States District Judge

Date: January 17, 2019